IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 3:23CR209 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JUDGE JEFFREY HELMICK |
| | ) | |
| DERRICK MURPHY, | ) | GOVERNMENT'S RESPONSE |
| | ) | TO GUIDELINE OBJECTIONS |
| Defendant. | ) | |

Now comes the United States of America by and through undersigned counsel and responds to the pending objections regarding the appropriate Guideline range to be used in this case.

**A. United States' objections.**

The government withdraws its objections to the proposed Guideline calculations in the pre-sentence report.

**B. Murphy's objections.**

Murphy objects to the applicability of several Guideline sections, as discussed in more detail below. The government submits that each objection is without merit and the specific base offense level and enhancement is appropriately applied. In addition to the legal arguments presented herein, the government anticipates providing testimony at the sentencing hearing to support the factual bases referenced.

1

1. Base offense level.

The information charges a violation of 18 U.S.C. § 2422(b) – Coercion and Enticement of a Minor. Appendix A of the current edition of the Guidelines Manual specifies that Guideline sections 2G1.1 or 2G1.3 should apply. U.S.S.G. § 2G1.1 applies to convictions of 18 U.S.C. § 1591(b)(1) or similar offenses not involving a minor. U.S.S.G. § 2G1.3(a)(3), however, involves a conviction under 18 U.S.C. § 2422(b) and should be the starting point for analysis. U.S.S.G. § 2G1.3 contains a cross-reference for offense conduct that involves "causing… a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct" in which case U.S.S.G. § 2G2.1 should be applied, if the resulting offense level is greater than that determined under U.S.S.G. § 2G1.3. *United States v. Gould*, 30 F.4th 538 (6th Cir. 2022) (holding that U.S.S.G. § 2G1.3(c)(1) cross-reference appropriately applied to defendant convicted of violation of 18 U.S.C. § 2422(b) where underlying conduct was production of visual depiction of minor engaging in sexually explicit conduct). Because U.S.S.G. § 2G2.1 results in a greater offense level, it is appropriately applied.

Murphy's argument that his "purpose" in causing the victim to engage in sexual activity was not that a visual depiction be produced is a nonstarter. At the change of plea hearing, the government made clear that the underlying "sexual activity" that supported the offense of conviction was Murphy's repeated requests that the victim make a video recording of herself engaged in a threesome. (Doc. 8: Plea Trans., PageID 100). Such conduct would constitute a violation of 18 U.S.C. § 2251 and, as such, was the predicate law violation for the charged offense. At no time did Murphy challenge or dispute this fact. Nor could he as his repeated requests that the victim make a video and his clarification that he wanted to see a "train," or

"some brothers run it on u," and sending the victim a picture depicting a female engaged in multiple sex acts with two males make his purpose clear.

Further, although Murphy does not elaborate on what his alternate purpose in repeatedly requesting such sexually explicit videos would be, it matters not. The law does not require a defendant's *sole* purpose in engaging in such conduct to be for the production of visual images. *United States v. Frei*, 995 F.3d 561, 567 (6th Cir. 2021).

2. Commission of sex act.

U.S.S.G. § 2G2.1(b)(2)(A) provides for a two-level enhancement if the offense involved the commission of a sex act or sexual contact. Murphy argues that because commission of a sex act is an element of the offense of conviction, application of the enhancement would be improper. Violations of 18 U.S.C. § 2422(b) are complete once the defendant persuades, induces, entices, coerces, or attempts to do any of those things. The government is not required to prove that the defendant completed or attempted to complete any specific chargeable offense. *United States v. Hart*, 635 F.3d 850, 855 (6th Cir. 2011); *see also United States v. Fuller*, 77 Fed. Appx. 371, 378 (6th Cir. 2003) (finding 18 U.S.C § 2422(b) "criminalizes both the enticement and the attempted enticement, but not the actual performance of the sexual activity.") citing *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000). Therefore, since commission of a sex act is not an element of Murphy's offense of conviction, the enhancement should apply.

3. Use of computer.

U.S.S.G. § 2G2.1(b)(6)(B) provides for a two-level enhancement if the offense involved the use of a computer or an interactive computer service to either "persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct; or solicit participation with a minor in sexually explicit conduct." Murphy argues that because any

3

violation of 18 U.S.C. § 2422(b) requires the use of a computer, the enhancement should not apply. This argument has routinely been rejected by the Sixth Circuit. While this court has the authority to reject application of any enhancement for policy reasons, it doesn't mean it must or should. *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011). Further, when a distinct harm is targeted by application of the enhancement, its application is perfectly legitimate regardless of the frequency with which it may be applied. *United States v. Lynde*, 926 F.3d 275, 280 (6th Cir. 2019) citing *United States v. Lester*, 688 F. App'x 351, 352 (6th Cir. 2017). Here, where Murphy used his cell phone to beg the victim to send him a video on a repeated basis and further used his phone to send her visual depictions of what kind of conduct he wanted her to engage in, the court should apply the enhancement. This is particularly true when Murphy's use of the cell phone to communicate with the victim allowed him greater access than he would otherwise have had to her and made it harder for anyone to detect the crimes he was committing against her.

    4. <u>Vulnerable Victim.</u>

U.S.S.G. § 3A1.1(b)(1) provides for a two-level enhancement if Murphy "knew or should have known that a victim of the offense was a vulnerable victim." App. n. 2 of that section clarifies that a vulnerable victim is one "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct."

The victim in this case was 16 years old at the time Murphy met her and began exploiting her. The text message communications between Murphy and the victim show that he knew the vulnerable state that she was in. Specifically, Murphy knew that she was drinking heavily and smoking marihuana. He knew that she was estranged from her parents. He knew that she was engaging in commercial sex acts because she needed the money to survive, to pay her rent and

eat. His argument that the victim was somehow voluntarily in this horrible situation before he met her serves only to highlight her vulnerability, not lessen it. An enhancement for undue influence or vulnerable victim under the Guidelines "is not limited to force, fraud, or coercion." *United States v. Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014). It also applies to "manipulating" and "preying upon" a vulnerable victim. *United States v. Reid,* 751 F.3d 763, 768 (6th Cir. 2014) citing *Willoughby*, 742 F.3d at 241. The Sixth Circuit has held that a victim enhancement is applicable where minor victims "were troubled, …were on drugs when [the defendant] met them, and… the defendant encouraged them to prostitute themselves by offering them drugs, money, and a roof over their heads, three things particularly enticing to… teenage runaways." *United States v. Farmer*, 673 F. App'x 518, 524 (6th Cir. 2016). Where the investigation also indicated that Murphy physically assaulted the victim after she refused to give him her prostitution earnings, the enhancement is even more appropriate and should be applied.

    5. Obstruction of justice.

U.S.S.G. § 3C1.1 provides for a two-level enhancement if Murphy "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" and the obstructive conduct was related to either the offense of conviction or a closely related offense. App. n. 4 of that section sets forth several examples of covered conduct including "threatening, intimidating, or otherwise unlawfully influencing a… witness… directly or indirectly, or attempting to do so."

As noted in the pre-sentence report, Murphy's first call after finding out about the criminal complaint involving this victim was to the victim. During that call and subsequent calls, Murphy told the victim her statements to law enforcement would be posted on Facebook. He repeatedly asks her why she made a statement to the police. He pushes her to confirm what

5

she said. He tells her he's facing additional charges because of it, that he could go to jail for the rest of his life because of it, and that his daughters will have to go to school and deal with this now. When the victim tries to distance herself from the situation, telling him all that stuff was in her phone and that she was arrested, he lets her know it doesn't matter. When he calls her on three-way through another prostitute and she doesn't respond to his questions, the other prostitute yells at her calling her a "b**ch" and asks her why she would do that. When the victim cries on the phone, he tells her it's no time for that.

After Murphy's attempts to intimidate the victim directly, he then tried to intimidate her through her mother. Murphy called the victim's mother and tried to convince her that he had never done anything improper or inappropriate with her daughter. When she expresses that she's unsure about what's going on, he pushes her to talk to the victim. And, after the victim's mother talks to her and again talks to Murphy and tells him that she's still unsure but feels like the victim is "more loyal" to Murphy than her, he then starts having his sister talk to the victim's mother. Murphy specifically introduces them on the phone and then says his sister is going to be calling her because he doesn't want to be involved with "witness tampering."

Later, when Murphy gained access through discovery to the particular details of the victim's statement, he sent them to his then girlfriend who posted them on Facebook with several threatening and harassing posts and comments.

Ultimately, Murphy's efforts were successful as the victim refused to cooperate with the government in its prosecution of him in Case No. 3:21CR470. As such, an adjustment for obstruction of justice is appropriate.

6

### C. Conclusion.

The pre-sentence report correctly sets forth the base offense level and applicable enhancements and the government urges this court to adopt the report's offense level of 40, prior to the application of any chapter three adjustments for multiple counts of conviction or acceptance of responsibility, which the government will address at the scheduled sentencing hearing on this and Murphy's unrelated narcotics' convictions in Case No. 3:21CR335.

Respectfully submitted,

REBECCA C. LUTZKO
UNITED STATES ATTORNEY

By: */s/ Alissa M. Sterling*
   */s/ Ava R. Dustin*
Alissa M. Sterling (0070056)
Ava R. Dustin (0059765)
Assistant United States Attorneys
Four Seagate, Suite 308
Toledo, Ohio 43604
Phone: (419) 259-6376
Email: Alissa.Sterling@usdoj.gov
Email: Ava.Rotell.Dustin@usdoj.gov